## PART B(1)
## EDUCATION AND HEALTH OF JUVENILE

147.  Educational **[d]D**ecision **[m]M**aker**[.]**
**148.  Educational Stability & Removal From Home**

\*        \*        \*

**[This is an entirely new rule.]**

## RULE 148.  EDUCATIONAL STABILITY & REMOVAL FROM HOME

A.  **General Rule.**  Any order resulting in the removal of the juvenile from home or a change in placement shall address the educational stability of the juvenile.

B.  **School of Origin.**  A juvenile removed from home shall remain in their school of origin unless the court finds remaining in the school of origin is not in the juvenile's best interest or protective of the community.  If the court finds that it is not in the best interest for the juvenile or protective of the community to remain in the school of origin, then the court may order the juvenile to be enrolled in another school that best meets the juvenile's needs.

C.  **Another School.**  If a court orders the juvenile to be enrolled in another school pursuant to paragraph (B), then the juvenile shall attend a public school unless the court finds that a public school is not in the best interest of the juvenile or protective of the community.

### Comment

This rule is intended to apply at any point in a delinquency proceeding when the juvenile is removed from home, including pre-dispositional detention placement and post-dispositional modification resulting in the juvenile's out of home placement or a change to that placement.  This rule is intended to complement rather than supersede the requirements of Rule 512(D)(6).

In paragraph (B), the best interest determination should be based on factors including the appropriateness of the current educational setting considering the juvenile's needs, the proximity of the school of origin relative to the placement location, and the protection of the community.  This paragraph is intended to facilitate educational stability while the juvenile remains under the jurisdiction of the Juvenile Court and to codify the presumption that a juvenile is to remain in their school of origin absent evidence that it is not in the best interest of the juvenile or protective of the community to do so.

In paragraph (C), circumstances indicating that it may not be in the best interest for the juvenile to attend a public school includes the security and safety of the juvenile and treatment needs. Paragraph (C) is intended to codify the presumption that a juvenile is to attend public school while in placement absent evidence demonstrating that it is not in the best interest of the juvenile or protective of the community to do so. The bundling of residential services and educational services should not be permitted without a court order authorizing such.

For release of information to school, see Rule 163.

**Official Note:** Rule 148 adopted December 21, 2018, effective May 1, 2019.

*Committee Explanatory Reports:*

Final Report explaining the provisions of Rule 148 published with the Court's Order at __ Pa.B. __ (__ __, 2018).

**RULE 163.  RELEASE OF INFORMATION TO SCHOOL**

\*      \*      \*

## Comment

**For educational stability of juvenile when removed from home, see Rule 148.**

Pursuant to paragraph (B), the juvenile probation office is required to provide notice to the building principal or his or her designee for maintaining court records separately from official school records.  Some school districts have established local policies relating to the receipt of this information that requires the information to be provided to a school district official other than a building principal.  That individual should be regarded as the building principal's designee with respect to the provisions of this rule.

\*      \*      \*

**Official Note:**  Rule 163 adopted April 1, 2005, effective October 1, 2005.  Amended May 21, 2012, effective August 1, 2012.  Amended July 28, 2014, effective September 29, 2014.  **Rule 163 amended December 21, 2018, effective May 1, 2019.**

*Committee Explanatory Reports:*

Final Report explaining the provisions of Rule 163 published with the Court's Order at 35 Pa.B. 2214 (April 16, 2005).  Final Report explaining the amendments to Rule 163 published with the Court's Order at 42 Pa.B. 3203 (June 9, 2012).  Final Report explaining the amendments to Rule 163 published with the Court's Order at 44 Pa.B. 5447 (August 16, 2014).  **Final Report explaining the amendments to Rule 163 published with the Court's Order at      Pa.B.      (      , 2018).**

**RULE 195. POWERS, DUTIES, AND TRAINING OF A JUVENILE PROBATION OFFICER**

A. **Powers and Duties of a Juvenile Probation Officer.** Subject to any limitation imposed by the court, a juvenile probation officer shall:

1) take children, juveniles, and minors into custody pursuant to:

   a) the Juvenile Act, 42 Pa.C.S. §§ 6304 and 6324;

   b) the Child Protective Services Law (CPSL), 23 Pa.C.S. §§ 6301 *et seq.*;

   c) a bench warrant as set forth in Rules 140, 141, and 1140; or

   d) Rule 1202;

2) authorize detention or shelter care for a juvenile, and the shelter care of a child, pursuant to 42 Pa.C.S. §§ 6304, 6325, or 6331;

3) receive and examine written allegations unless the District Attorney has elected to receive and approve all written allegations pursuant to Rule 231(B);

4) make appropriate referrals for informal adjustment, consent decree, or other diversionary programs;

5) file petitions if diversionary programs are not appropriate unless the District Attorney has elected to file all petitions pursuant to Rule 330(A);

6) make investigations, reports, including social studies pursuant to Rule 513, and recommendations to the court;

7) make appropriate referrals to private and public agencies, psychological or psychiatric providers, drug and alcohol facilities or programs, or any other necessary treatments or programs;

8) communicate to the court and parties, and facilitate any special needs, including health and education, of the juvenile;

9) supervise and assist a juvenile placed on probation or a child under the court's protective supervision or care;

10) search the person and property of juveniles pursuant to 42 Pa.C.S. § 6304(a.1);

11) regularly oversee and visit juveniles in placement facilities;

12) report suspected child abuse pursuant to 23 Pa.C.S. § 6311; **[and]**

**13) receive allegations that a child has failed to satisfy penalties for violating compulsory school attendance, as permitted by local rule; and**

**[13]14**) perform any other functions as designated by the court.

B. **Limitations on [p]Powers and [d]Duties.** The President Judge of each judicial district may limit the power and duties of its juvenile probation officers by local rule.

C. **Training. [No later than January 1, 2012 or w]W**ithin 180 days after being appointed or employed, a juvenile probation officer shall be trained on:

1) the Juvenile Act;

2) the Pennsylvania Rules of Juvenile Court Procedure;

3) the Child Protective Services Law (CPSL); and

4) any local procedures.

**Comment**

Pursuant to paragraph (A)(1), a juvenile probation officer has the authority to take children, juveniles, and minors into custody pursuant to the Juvenile Act, the CPSL, a bench warrant, or Rule 1202. 23 Pa.C.S. §**§** 6301 *et seq.* and 42 Pa.C.S. §**§** 6301 *et seq.*

When a juvenile is under the court's supervision, the juvenile probation officer may take a juvenile into custody pursuant to the Juvenile Act, 42 Pa.C.S. §§ 6304(a)(3) and (5) and 6324(1) through (5), and bench warrants as set forth in Rules 140, 141, and 1140.

5

When a child, juvenile, or minor is not under the court's supervision, the juvenile probation officer, as a duly authorized officer, may take a child, juvenile, or minor into custody pursuant to the Child Protective Services Law (CPSL), 23 Pa.C.S. § 6315 and the Juvenile Act, 42 Pa.C.S. §§ 6304(a)(3) and (5) and 6324(1), (3), and (4).

A properly commissioned juvenile probation officer is vested with all the powers and duties as set forth in 42 Pa.C.S. § 6304 and the power to take a child into protective custody as a duly authorized officer of the court pursuant to 42 Pa.C.S. § 6324 unless the President Judge has limited such authority pursuant to paragraph (B).

The President Judge may adopt a local rule, pursuant to the procedures of Rule 121 **and Pa.R.J.A. No. 103(d)**, limiting the authority granted by the commission to juvenile probation officers. In determining whether to limit the authority of juvenile probation officers, the President Judge should consider the training and experience necessary to perform the various duties as provided in this rule. For example, the President Judge may choose to prohibit juvenile probation officers from taking a child into protective custody who is believed to be in imminent danger from his or her surroundings, but who is not under the court's supervision as a delinquent or dependent child. *See* 42 Pa.C.S. § 6324.

In situations when a juvenile probation officer takes a child into protective custody who is in imminent danger from his or her surroundings pursuant to 42 Pa.C.S. § 6325, 23 Pa.C.S. § 6315, and Rule 1202, the juvenile probation officer should take the appropriate steps to ensure the child's safety, immediately contact the county agency, and document for the county agency the circumstances which necessitated protective custody. *See* Rule 1202 and its *Comment.*

The juvenile probation officer may also supervise or assist a child placed in his or her protective supervision or care by the court. *See* 42 Pa.C.S. § 6304.

Pursuant to paragraph (A)(3), the juvenile probation officer is to receive written allegations from local law enforcement agencies to determine if a case may proceed to juvenile court. However, pursuant to Rule 231(B), the District Attorney of any county may require initial receipt and approval of written allegations before a delinquency proceeding may be commenced. *See* Rule 231(B).

Pursuant to paragraph (A)(6) and (7), the juvenile probation officer is to prepare reports compiling the juvenile's information for the court and make the necessary referrals to programs supported by a need revealed during the investigation.

Pursuant to paragraph (A)(8), the juvenile probation officer is to communicate the information to all parties before approaching the court. *See* Rule 136 for *ex parte* communication.

Pursuant to paragraph (A)(11), the juvenile probation officer is to oversee all juveniles ordered to placement facilities. Juvenile probation officers should visit all juveniles in placement facilities on a regular basis to determine if: 1) the juvenile is receiving the appropriate treatment; and 2) the facility is meeting the needs of the child. The Juvenile Court Judges' Commission Standards Governing Aftercare Services recommend that all juveniles be visited on a monthly basis. The juvenile probation officer is to report any irregularities or controversies to the court and all parties as soon as they are made known to the juvenile probation officer.

**Pursuant to paragraph (A)(13), the President Judge may adopt a local rule to permit the juvenile probation office to receive allegations that a child has failed to pay fines or costs related to a truancy conviction.** *See* **24 P.S. §13-1333.3(f)(2). Nothing in this paragraph is intended to preclude the use of diversionary programs to address the nonpayment of fines or costs.**

Pursuant to paragraph (A)(**[13]14**), a juvenile probation officer may perform any other function designated by the court to carry out the purposes of the Juvenile Act.

Pursuant to paragraph (C), the juvenile probation officer is to be trained in the Juvenile Act, the Pennsylvania Rules of Juvenile Court Procedure, the CPSL, and any local procedures. The training is to occur within 180 days of the juvenile probation officer's appointment or employment. It is best practice for juvenile probation officers to receive training within the first ninety days of employment. It is also best practice that juvenile probation officers receive specialized training and educational updates on a continuing basis.

Specialized training for juvenile probation officers should include delinquency and dependency procedures and areas that address their duties as officers of the court.

**Official Note:** Rule 195 adopted **May 20, 2011**, effective **July 1, 2011**. **Amended December 21, 2018, effective May 1, 2019.**

*Committee Explanatory Reports:*

Final Report explaining the provisions of Rule 195 published with the Court's Order at 41 Pa.B. **2839** (**June 4, 2011**). **Final Report explaining the amendments to Rule 195 published with the Court's Order at __ Pa.B. __ (__ __, 2018).**

**RULE 512.  DISPOSITIONAL HEARING**

\*       \*       \*

D. **Court's [f]Findings.**  The court shall enter its findings and conclusions of law into the record and enter an order pursuant to Rule 515.  On the record in open court, the court shall state:

   1)  its disposition;

   2)  the reasons for its disposition;

   3)  the terms, conditions, and limitations of the disposition; and

   4)  if the juvenile is removed from the home:

      a)  the name or type of any agency or institution that shall provide care, treatment, supervision, or rehabilitation of the juvenile**[, and]:**

      b)  its findings and conclusions of law that formed the basis of its decision consistent with 42 Pa.C.S. §§ 6301 and 6352, including why the court found that the out-of-home placement ordered is the least restrictive type of placement that is consistent with the protection of the public and best suited to the juvenile's treatment, supervision, rehabilitation, and welfare; **and**

      **c) the provision of educational services for the juvenile pursuant to Rule 148;**

   5)  whether any evaluations, tests, counseling, or treatments are necessary;

   6)  any findings necessary to ensure the stability and appropriateness of the juvenile's education, and when appropriate, the court shall appoint an educational decision maker pursuant to Rule 147; and

   7)  any findings necessary to identify, monitor, and address the juvenile's needs concerning health care and disability, if any, and if parental consent cannot be obtained, authorize evaluations and treatment needed.

**Comment**

\*       \*       \*

8

**Official Note:**  Rule 512 adopted April 1, 2005, effective October 1, 2005.  Amended May 17, 2007, effective August 20, 2007.  Amended April 21, 2011, effective July 1, 2011.  Amended April 29, 2011, effective July 1, 2011.  Amended May 16, 2011, effective July 1, 2011.  Amended May 26, 2011, effective July 1, 2011.  Amended July 18, 2012, effective October 1, 2012.  **Amended April 6, 2017, effective September 1, 2017.**  Amended May 11, 2017, effective October 1, 2017.  **Amended December 21, 2018, effective May 1, 2019.**

*Committee Explanatory Reports:*

Final Report explaining the provisions of Rule 512 published with the Court's Order at 35 Pa.B. 2214 (April 16, 2005).  Final Report explaining the amendments to Rule 512 published with the Court's Order at 37 Pa.B. 2506 (June 2, 2007).  Final Report explaining the amendments to Rule 512 published with the Court's Order at 41 Pa.B. 2319 (May 7, 2011).  Final Report explaining the amendments to Rule 512 published with the Court's Order at 41 Pa.B. 2413 (May 14, 2011).  Final Report explaining the amendments to Rule 512 published with the Court's Order at 41 Pa.B. 2684 (May 28, 2011).  Final Report explaining the amendments to Rule 512 published with the Court's Order at 41 Pa.B. 3180 (June 25, 2011).  Final Report explaining the amendments to Rule 512 published with the Court's Order at 42 Pa.B. 4909 (August 4, 2012).  **Final Report explaining the amendments to Rule 512 published with the Court's Order at 47 Pa.B. 2313 (April 22, 2017).**  Final Report explaining the amendments to Rule 512 published with the Court's Order at **47** Pa.B. **2969** (**May 27, 2017**).  **Final Report explaining the amendments to Rule 512 published with the Court's Order at      Pa.B.      (      , 2018).**

## PART B(1)
## EDUCATION AND HEALTH OF CHILD

1145.  Application or Motion for Examination and Treatment of a Child
**1146.  Notice of Truancy Hearing**
1147.  Educational **[d]D**ecision **[m]M**aker**[.]**
**1148.  Educational Stability & Placement**

**[This is an entirely new rule.]**

**RULE 1146.  NOTICE OF TRUANCY HEARING**

Upon receiving written notice of a hearing regarding a citation or complaint for truancy against a child or a person in parental relation pursuant to 24 P.S. § 13-1333.1 when the child is the subject of a dependency proceeding, the county agency shall serve a copy of the notice upon the dependency court and parties.

**Comment**

Pursuant to 24 P.S. § 13-1333.2(b)(1), the court in which a truancy citation or complaint is filed shall provide the county agency with written notice of the hearing.  For definition of "person in parental relation," see 24 P.S. § 13-1326.

The President Judge may adopt local rules coordinating jurisdiction and proceedings between the judge of the court where the citation or complaint was filed and the dependency court judge.  Coordination may include, but is not limited to, the entry of an order staying the truancy proceeding for further consideration by the dependency court.

**Official Note:**  Rule 1146 adopted December 21, 2018, effective May 1, 2019.

*Committee Explanatory Reports:*

Final Report explaining the provisions of Rule 1146 published with the Court's Order at __ Pa.B. __ (__ __, 2018).

**RULE 1147.  EDUCATIONAL DECISION MAKER[.]**

A. **Generally.**  At any proceeding or upon motion, the court shall appoint an educational decision maker for the child if it determines that:

1)  the child has no guardian; or

2)  the court, after notice to the guardian and an opportunity for the guardian to be heard, has made a determination that it is in the child's best interest to limit the guardian's right to make decisions regarding the child's education.

B. **Notice of hearings.**  The educational decision maker shall receive notice of all proceedings.

C. **Duties and responsibilities.**  The educational decision maker shall:

1)  make appropriate inquiries and take appropriate actions to ensure that:

a)  issues concerning the child's educational stability are addressed;

b)  school discipline matters are addressed;

c)  the child is receiving appropriate education that will allow the child to meet state standards, including any necessary services concerning special education in the least restrictive environment, or remedial services;

d)  the child, who is **[sixteen] <u>fourteen</u>** years of age or older, is receiving the necessary educational services to transition to **[independent living] <u>successful adulthood</u>**;

e)  the child, who is receiving services concerning special education, is engaged in transition planning with the school entity beginning no later than the school year in which the child turns fourteen; and

f)  the child, who is aging out of care within ninety days, has a transition plan that addresses the child's educational needs, and if applicable, the plan is coordinated with the child's transition planning concerning special education under the Individuals with Disabilities Education Act.

2)  address the child's educational needs by:

a) meeting with the child at least once and as often as necessary to make decisions regarding education that are in the **child's** best interests **[of the child]**;

b) participating in special education and other meetings, and making decisions regarding all matters affecting the child's educational needs in a manner consistent with the child's best interests;

c) making any specific recommendations to the court relating to:

   i) the timeliness and appropriateness of the child's educational placement;

   ii) the timeliness and appropriateness of the child's transitional planning; and

   iii) services necessary to address the child's educational needs;

d) appearing and testifying at court hearings when necessary; and

e) having knowledge and skills that ensure adequate representation of the child.

### Comment

A child in dependent care is to have a clearly identified, legally authorized educational decision maker. This is a particular concern for highly mobile children whose caregivers may change and whose guardian may be unavailable. An educational decision maker's responsibilities may include, but are not limited to: ensuring educational stability as mandated by 42 U.S.C. §§ 675(1)(G) and 11431 *et seq.*; ensuring prompt enrollment in a new school as required pursuant to 22 Pa. Code § 11.11(b); facilitating access to a full range of school programs; advocating for the child in school discipline matters; ensuring meaningful transition planning as required by 42 Pa.C.S. § 6351 and 42 U.S.C. § 675(5)(H); and for a child eligible for special education, ensuring access to appropriate services including transition planning beginning no later than age fourteen. *See* 24 P.S. §§ 13-1371, 13-1372, 20 U.S.C. §**§** 1400 *et seq. See* paragraph (A) and (C).

An educational decision maker appointed pursuant to this rule who represents a child who is also adjudicated delinquent is to review Rule 147.

A court is not to appoint an educational decision maker if there is a parent, guardian, or other authorized person (*e.g.*, foster parent, relative with whom the child

lives or surrogate parent appointed under the IDEA) who is competent, willing, and available to make decisions regarding the child's education and who is acting in the child's best interest regarding all educational matters.  *See* Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* (2004).  A court should limit the authority of a parent to make decisions regarding education only to the extent necessary to protect the child's interest and can reinstate the parent or change the educational decision maker at any time.

Unless limited by the court in its appointment order, an educational decision maker: 1) is responsible for making all decisions concerning education, including special education, for the child; and 2) can consent to or prohibit the release of information from the child's school records as a parent in accordance with the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g and 34 C.F.R. § 99.3 (1974).  The educational decision maker may be a family member, a family friend, a mentor, a foster parent, a former foster parent, a Court Appointed Special Advocate, or, if an educational decision maker for special education is not needed, a child welfare professional.  Except as otherwise provided by the IDEA, it is within the discretion of the court to appoint an educational decision maker and whom to appoint. In all cases, however, an educational decision maker appointed by the court should be familiar with a child's educational rights or is to agree to be trained regarding these issues.

If the child is or may be eligible for special education, an educational decision maker is to be appointed in accordance with the standards and procedures set forth in federal and state laws concerning special education.  *See* IDEA, 20 U.S.C. §§ 1400, 1401(23), and 1415(b)(2); 34 C.F.R. §§ 300.30, 300.45, and 300.519.  The IDEA recognizes a court's authority to appoint persons to make decisions concerning special education for a child.  However, such decision makers cannot be the State or employees of any agency that is involved in the education or care of the child.  34 C.F.R. §300.519(c), (d)(2)(i).

The educational decision maker should refer to the Fostering Connections to Success and Increasing Adoptions Act of 2008 (P.L. 110-351) and the McKinney-Vento Homeless Assistance Act, 42 U.S.C. §§ 11431 *et seq.* (1989) for guidance in educational stability.  Specifically, the educational decision maker is to: a) ensure the right to remain in the same school regardless of a change in placement when it is in the child's best interest; b) facilitate immediate enrollment in a new school when a school change is in the child's best interest; and c) ensure that school proximity is considered in all placement changes, 42 U.S.C. §§ 675(1)(G) and 11431 *et seq.*

The educational decision maker is to also ensure: a) that the child receives an appropriate education, including, as applicable, any necessary special education, early intervention, or remedial services; see 24  P.S. §§ 13-1371, 13-1372, 55 Pa. Code § 3130.87, 20 U.S.C. §§ 1400 *et seq.*; b) that the child receives educational services

necessary to support the child's transition to **[independent living pursuant to 42 Pa.C.S. § 6351]** <u>successful adulthood</u> if the child is **[sixteen]** <u>fourteen</u> or older **<u>pursuant to 42 Pa.C.S. § 6351(F)(8)</u>**; and c) that the educational decision maker participates in the development of a transition plan that addresses the child's educational needs pursuant to 42 U.S.C. § 675(5)(H) if the child will age out of care within ninety days.

The authority of the court to appoint an educational decision maker is derived from the broad powers of the court to issue orders that "provide for the care, protection, safety, and wholesome mental and physical development of children." 42 Pa.C.S. § 6301(b)(1.1). The IDEA also requires that each child who is eligible for special education has an active parent or other identified person who can participate in the process concerning special education. *See* IDEA, 20 U.S.C. §§ 1401(23) and 1415(b)(2); 34 C.F.R. §§ 300.30, 300.45, and 300.519.

**Official Note:** Rule 1147 adopted **<u>April 29, 2011</u>**, effective **<u>July 1, 2011</u>**. **<u>Amended December 21, 2018, effective May 1, 2019.</u>**

*Committee Explanatory Reports:*

Final Report explaining the provisions of Rule 1147 published with the Court's Order at 41 Pa.B. **<u>2413</u>** (**<u>May 14, 2011</u>**). **<u>Final Report explaining the amendments to Rule 1147 published with the Court's Order at ___ Pa.B. ___ (_____, 2018).</u>**

15

**[This is an entirely new rule.]**

**RULE 1148. EDUCATIONAL STABILITY & PLACEMENT**

A. **General Rule.** Any order resulting in the placement of a child or a change in placement shall address the educational stability of the child.

B. **School of Origin.** A child in placement shall remain in their school of origin unless the court finds remaining in the school of origin is not in the child's best interest. If the court finds that it is not in the best interest of the child to remain in the school of origin, then the court may order the child to be enrolled in another school that best meets the child's needs.

C. **Another School.** If a court orders the child to be enrolled in another school pursuant to paragraph (B), then the child shall attend a public school unless the court finds that a public school is not in the best interest of the child.

**Comment**

This rule is intended to apply at any point in a dependency proceeding when the child is in placement, including pre-dispositional placement and post-dispositional modification of a dependent child's placement. This rule is intended to complement rather than supersede the requirements of Rule 1512(D)(1)(i).

In paragraph (B), the best interest determination should be based on factors including the appropriateness of the current educational setting considering the child's needs and the proximity of the school of origin relative to the placement location. This paragraph is not intended to usurp the administrative process contemplated by the Elementary and Secondary Education Act of 1965, *as amended*, 20 U.S.C. § 6311(g)(1)(E). This paragraph is intended to facilitate educational stability while the child remains under the jurisdiction of the Juvenile Court and to codify the presumption that a child is to remain in their school of origin absent evidence that it is not in the child's best interest to do so.

In paragraph (C), circumstances indicating that it may not be in the best interest for the child to attend a public school include the security and safety of the child and treatment needs. Paragraph (C) is intended to codify the presumption that a child is to attend public school while in placement absent evidence demonstrating that it is not in the best interest of the child to do so. The bundling of residential services and educational services should not be permitted without a court order authorizing such.

A court may consider an Individualized Education Program, Service Agreement, or administrative determination in making findings pursuant to this Rule.

**Official Note:**  Rule 1148 adopted December 21, 2018, effective May 1, 2019.

*Committee Explanatory Reports:*

Final Report explaining the provisions of Rule 1148 published with the Court's Order at __ Pa.B. __ (__ __, 2018).